UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEVIN R. CLINE,

                       Plaintiff,

          -vs-                                    13-CV-1060-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                       Defendant.

---

APPEARANCES:   LEWIS L. SCHWARTZ, PLLC (LEWIS L. SCHWARTZ, ESQ.) Buffalo, New York, for Plaintiff.

                     WILLIAM J. HOCHUL, JR., United States Attorney (SUSAN REISS, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

## **INTRODUCTION**

This matter has been transferred to the undersigned for all further proceedings, by order of United States District Judge William M. Skretny dated December 15, 2014 (Item 13).

Plaintiff Kevin R. Cline initiated this action on October 21, 2013 pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Act. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 7, 11). For the following reasons, plaintiff's motion is GRANTED, and the Commissioner's motion is DENIED.

**BACKGROUND**

Plaintiff was born on April 10, 1963 (Tr. 162).[1]  He protectively filed an application for DIB on September 17, 2010, alleging disability due to cervical impairment, toxoplasmosis, and migraine headaches, with an onset date of December 31, 2009 (Tr. 162, 175).  The claims were denied initially on November 29, 2010 (Tr. 102-06).  Plaintiff then requested a hearing, which was held on February 8, 2012, before Administrative Law Judge ("ALJ") Bruce R. Mazzarella (Tr. 32-85).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  A vocational expert ("VE") also testified.

On March 22, 2012, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 21-28).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. § 404.1520), the ALJ found that plaintiff's impairments (neck pain and obesity), while "severe," did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")  (Tr. 20-21).  Additionally, the ALJ found that plaintiff's toxoplasmosis, migraine headaches, depression, and anxiety were not severe impairments (Tr. 23-24).  The ALJ discussed the evidence in the record, including plaintiff's history of cervical disc replacement surgery, medical records, diagnostic tests, reports of consultative examiners, and plaintiff's hearing testimony.  He determined that plaintiff was capable of performing his past relevant work as a supervisor of janitorial services (Tr. 28) and has the residual functional capacity ("RFC") to perform light work with certain non-exertional limitations (Tr. 24).  Specifically, the ALJ found that plaintiff could sit, stand, and walk for

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner in this action.

an eight-hour workday with normal breaks and could lift up to 20 pounds occasionally and 10 pounds frequently.  *Id.*  He should not work with his arms above head level, should not engage in repetitive neck motion, and should avoid loud work environments.  *Id.*  Accordingly, the ALJ found that plaintiff has not been under a disability from the onset date through the date of the decision (Tr. 28).

The ALJ's decision became the final decision of the Commissioner on August 20, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-5), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because (1) the ALJ failed to properly consider plaintiff's past relevant work; (2) the ALJ erred in failing to consider all of plaintiff's impairments in formulating the RFC; (3) the ALJ erred in his assessment of the medical opinion evidence; and (4) the ALJ erred in his assessment of plaintiff's credibility.  *See* Items 7-1, 12.  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence.  *See* Item 11.

## DISCUSSION

I.   **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …."  42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as

adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or

misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the

court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for DIB under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 404.1521(a); *see also* § 404.1509 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a

listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008); 20 C.F.R. § 404.1520(a)(4)(v).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and

citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.'" *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III.     The ALJ's Disability Determination

ALJ Mazzarella determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since December 31, 2009, the alleged onset date (Tr. 23). At steps two and three, as indicated above, the ALJ found that plaintiff's toxoplasmosis, migraine headaches, depression, and anxiety were not severe and that his neck pain and obesity, while severe, did not meet or equal the severity of any of the impairments in the Listings (Tr. 23-24).

At step four, the ALJ discussed the evidence, including plaintiff's history of spinal surgery, his treatment records, hearing testimony, and the reports of consultative examiners. The ALJ afforded the greatest weight to the opinion of consultative physician John Schwab, D.O. (Tr. 27). Dr. Schwab found moderate restrictions in plaintiff's ability to move his head in any direction and mild limitations in his ability to raise his arms overhead, bend, lift, and carry (Tr. 27). Based on his review of the evidence, the ALJ found that plaintiff had the RFC to perform light work with some limitations (Tr. 24) and was able to perform his past work as a supervisor of janitorial services (Tr. 28). Accordingly, the ALJ determined that plaintiff was not disabled. *Id.*

### IV.     Plaintiff's Motion

**A. Plaintiff's Past Relevant Work**

Plaintiff argues that the ALJ erred in his analysis regarding plaintiff's past relevant work. The ALJ determined that plaintiff had the RFC to perform light work, which involves lifting no more than 20 pounds with frequent lifting or carrying of objects up to 10 pounds, requires a good deal of walking or standing, or may require some pushing or pulling of arm or leg controls. 20 C.F.R. § 404.1567(b). The ALJ noted certain limitations, including the plaintiff's inability to lift his arms above his head, move his neck in frequent and repetitive motions, and work in noisy conditions (Tr. 24). The ALJ found that plaintiff could perform his past relevant work as the supervisor of a janitorial service, which is classified as medium work but which the plaintiff performed as both light and medium work (Tr. 28).

"Pursuant to both case law and Social Security Ruling 82–62, in order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." *Matejka v. Barnhart,* 386 F.Supp.2d 198, 204-05 (W.D.N.Y. 2005) (quoting *Kerulo v. Apfel*, 1999 WL 813350, *8 (S.D.N.Y. Oct. 7, 1999)); Social Security Ruling ("SSR") 82-62, 1982 WL 31386, *3-4 (S.S.A. 1982). The claimant is the primary source for vocational documentation regarding the skill level and exertional demands of the past relevant work. In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain the following specific findings of fact: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. SSR 82-62, 1982 WL 31386, *4 (1982).

Plaintiff testified that he was the president of a cleaning company from 1999 until 2008. He supervised approximately 30 employees and his clients included stores and offices (Tr. 41-42). He taught his employees to do certain tasks, but he primarily supervised them (Tr. 75). When asked how much weight he lifted, plaintiff explained that his employees did most of the lifting. *Id.* The VE testified that the position of supervisor of janitorial services is classified as medium work, but that plaintiff did the job as both medium and light (Tr. 80).

Plaintiff contends that the ALJ did not make a specific finding of fact regarding the physical and mental demands of plaintiff's past relevant work as a janitorial supervisor. The ALJ merely stated in conclusory fashion that he compared plaintiff's RFC with the physical and mental demands of the position and found that plaintiff is able to perform it "as actually and generally performed" (Tr. 28). The Dictionary of Occupational Titles ("DOT") lists the position of supervisor of janitorial services as medium, skilled work (Tr. 229). In his Work History Report, plaintiff stated that he spent eight hours per day reaching, handling, and grasping and occasionally lifted up to 100 pounds (Tr. 196). Clearly, plaintiff cannot do the work as described in the DOT and as generally performed, that is, as medium work. The ALJ found that plaintiff has the RFC for light work with specific exertional limitations regarding overhead reaching and limitations on neck movements. Thus, the ALJ's finding that plaintiff could do the position as it is generally performed is not based on substantial evidence. Even if the ALJ had found that plaintiff could do the previous work only as he actually performed it, at the light exertion level, the ALJ failed to make a specific finding of fact as to the physical and mental demands of the past job. *See Zadorecky v. Astrue,* 2012 WL 3018031, *5 (W.D.N.Y. July 23, 2012) (failure to discuss physical and mental

demands of plaintiff's past work resulted in step four error). Accordingly, remand is required for a proper evaluation of plaintiff's past relevant work.

### B. Plaintiff's Non-Severe Impairments

Plaintiff further argues that the ALJ erred in finding that his depression and anxiety were non-severe impairments. Consequently, the ALJ did not include any mental limitations in his RFC determination and did not include mental limitations in his hypothetical questions to the VE. In the Second Circuit, courts consider an ALJ's assessment at "step two" as limited only to "screen out de minimis claims." *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir. 1995); *Wilson v. Colvin*, 2015 WL 1003933, at *19 (W.D.N.Y. Mar.6, 2015) ("The Second Circuit has held that the step-two severity test 'may do no more than screen out de minimis claims.'" (citing *Dixon,* 54 F.3d at 1030)). Thus, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality ... [with] no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting SSR 85–28, 1985 WL 56856, at *3 (Jan. 1, 1985)).

Here, consultative psychologist Dr. Renee Baskin diagnosed depressive disorder, not otherwise specified ("NOS') and anxiety disorder, NOS (Tr. 332). She found plaintiff's depressive and anxiety-related symptoms were secondary to his coping with chronic pain, medical problems, physical limitations, and financial stress (Tr. 330). Upon examination, Dr. Baskin found plaintiff's thought processes to be coherent and goal-directed, his affect was appropriate, his mood was euthymic, his attention and concentration were intact, his intellectual functioning was average, and his insight and judgment were good (Tr. 331).

Dr. Baskin found minimal to no limitation in plaintiff's ability to follow directions, perform both simple and complex tasks independently, maintain attention and concentration, maintain a regular schedule, make appropriate decisions, and relate adequately with others (Tr. 331-32). The only limitation Dr. Baskin noted was a moderate limitation dealing with stress (Tr. 332). Dr. Baskin stated that plaintiff's stress-related and psychiatric problems "may interfere to some degree with" his ability to function on a daily basis." *Id.* Dr. Baskin noted that plaintiff was not undergoing any counseling (Tr. 329).

In a Psychiatric Review Technique ("PRT"), State Review Analyst T. Andrews found no restriction in plaintiff's activities of daily living, no difficulty in maintaining concentration, persistence or pace, no repeated episodes of deterioration, and only mild difficulty in maintaining social functioning (Tr. 347).

The regulations provide that a "significant impairment" is one, singly or in combination with other impairments, which significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c); 404.1521(a). Nothing in Dr. Baskin's report indicates that plaintiff suffers from a mental impairment that causes a significant limitation in his ability to work. Likewise, the state review analyst found no severe mental impairments according to the PRT. It is apparent that the ALJ relied both on Dr. Baskin's consultative examination and the PRT completed by Dr. Andrews. Accordingly, the ALJ's determination that plaintiff's mental impairments were not severe for purposes of the regulations is supported by substantial evidence.

### C. Medical Opinion Evidence

Additionally, plaintiff argues that the ALJ erred in failing to assess the opinions of Drs. Baskin and Andrews and improperly evaluated the opinions of Drs. Melgar and Schwab.

With regard to the opinions of Drs. Baskin and Andrews, the ALJ properly evaluated the medical evidence. He noted that Dr. Baskin conducted a psychiatric consultative examination and diagnosed depressive disorder and anxiety disorder, NOS (Tr. 24). He also noted the PRT in which the state review analyst found no severe mental health disorder. In finding that plaintiff did not suffer from a severe mental health disorder, the ALJ did not reject the opinion of Dr. Baskin as plaintiff suggests, but properly noted that the record failed to establish any significant limitations as a result of his conditions. While Dr. Baskin found a "moderate limitation" in plaintiff's ability to deal with stress, this did not amount to a significant limitation in the plaintiff's ability to do work related activities. Having found that plaintiff's depression and anxiety were not severe impairments, no further analysis of these opinions was required.

As for the remaining medical opinions, Dr. Melgar's opinion that plaintiff has been unable to work since December 2009 was not given controlling weight as the ALJ found it was inconsistent with the medical record and was a conclusion reserved to the Commissioner (Tr. 27). The ALJ gave the greatest weight to the opinion of consultative examiner Dr. John Schwab, D.O. *Id.*

Under the Commissioner's regulations, a treating physician's opinion is entitled to controlling weight, provided that it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

in [the] case record." 20 C.F.R. §§ 416.927(c) (2), 404.1527(c)(2). However, "the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir.1999), citing 20 C.F.R. § 404.1527(d)(4). The Commissioner need not grant controlling weight to a treating physician's opinion on the ultimate issue of disability, as this decision lies exclusively with the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *Snell*, 177 F.3d at 133 ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

Here, Dr. Melgar, plaintiff's treating physician, completed a form for the Worker's Compensation Board stating that plaintiff has been unable to work as a result of neck pain and depression since December 2009 (Tr. 303). This is a statement going to the ultimate issue of disability and need not be given controlling weight. Additionally, the ALJ reviewed Dr. Melgar's progress notes and found that plaintiff reported relief from pain with medication (Tr. 240, 272, 282). Additionally, Dr. Melgar is not a psychiatrist, and never referred plaintiff for further mental health treatment. Thus, the ALJ properly found that Dr. Melgar's conclusion that plaintiff was totally disabled due to pain and depression is not entirely consistent with the medical evidence of record.

The ALJ afforded great weight to the opinion of Dr Schwab, the consultative physician, who found that plaintiff was in no acute distress, his gait and stance were normal, and his neurological findings were normal (Tr. 334). Dr. Schwab noted moderate restrictions in plaintiff's ability to move his head and mild restriction in plaintiff's ability to raise his arms above shoulder height, bend, lift, and carry (Tr. 336). These restrictions are incorporated into the plaintiff's RFC. The report of a consultative examiner may constitute substantial evidence. *See Petrie v. Astrue,* 412 F.App'x 401, 405 (2d Cir. 2011). The court

finds that the ALJ properly evaluated the medical opinions and remand is not required on this ground.

### D. Credibility Assessment

Finally, plaintiff argues that the ALJ erred in failing to provide clear reasons for his assessment of plaintiff's credibility. In assessing whether a claimant is disabled, the ALJ may consider the claimant's allegations of pain and functional limitations; however, the ALJ retains the discretion to assess the claimant's credibility. *See Fernandez v. Astrue*, 2013 WL 1291284, at *18 (E.D.N.Y. Mar. 28, 2013) (citing *Taylor v. Barnhart*, 83 F. App'x 347, 350 (2d Cir. 2003); *Correale–Englehart v. Astrue*, 687 F.Supp.2d 396, 434 (S.D.N.Y. 2010)). The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. First, the ALJ must decide whether the claimant suffers from a medically determinable impairment that "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(b). Second, where the record shows that the claimant has such a medically determinable impairment, the ALJ evaluates "the intensity and persistence of [the claimant's] symptoms" to determine the extent to which they limit the claimant's ability to work. 20 C.F.R. § 404.1529(c); *see also Fernandez*, 2013 WL 1291284, at *18.

Where the ALJ finds that the claimant's testimony is inconsistent with the objective medical evidence in the record, the ALJ must evaluate the claimant's testimony in light of seven factors: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any

treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii). An ALJ may properly reject subjective complaints, but must set forth his or her reasons with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence. *Lewis v. Apfel*, 62 F.Supp.2d 648, 651 (N.D.N.Y. 1999).

      Here, the ALJ found that plaintiff has severe impairments, but that his allegations of total disability were not consistent with the record as a whole (Tr. 26). The ALJ noted plaintiff's "fairly steady" work history, but found fault with plaintiff for continuing to work at medium jobs (janitorial supervisor and inventory clerk) despite complaints of pain following neck surgery in 2003 (Tr. 26-27). Additionally, the ALJ noted that plaintiff closed his cleaning business because his company was undercut by the competition, rather than as a result of his impairments (Tr. 26). In fact, after he closed his business, plaintiff attempted continued employment as an inventory clerk for his mother-in-law's oil change business, and worked as long as he was able (Tr. 43-44). While "a good work history may be deemed probative of credibility, it remains just one of many factors appropriately considered in assessing credibility." *Campbell v. Astrue,* 465 F. App'x 4, 7 (2d Cir. 2012); (internal quotation marks and citation omitted).

      The ALJ pointed to several inconsistent statements in assessing plaintiff's credibility. Specifically, plaintiff stated that he could drive for 20 minutes, but that he could sit for only 10 minutes (Tr. 27, 40, 63). He described panic attacks in his Function Report, but denied panic attacks at his consultative examination (Tr. 192, 330). He claimed he could not

manage money, but was able to order supplies for the oil change business and handled payroll and other financial records as president of his cleaning company (Tr. 185-86, 195-96). He said he could not afford migraine medication, but took several other prescription medications (Tr. 191, 301-26). He was not under the care of a specialist, either for pain, headaches, or mental health issues.

The court concludes that the ALJ properly evaluated plaintiff's credibility. There is no indication that the ALJ failed to apply correct principles of law, the reasons he gave were supported by substantial evidence, and his credibility determination was not patently unreasonable. Accordingly, remand is not required on this ground.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 7) is granted, the Commissioner's motion (Item 11) is denied, and the case is remanded for further proceedings consistent with this Decision.

So ordered.

                                          \_\_\_\_\_\s\ John T. Curtin_____
                                                JOHN T. CURTIN
                                        United States District Judge

Dated: June 25, 2015
p:\pending\2013\13-1060.may20.2015